THE NATIONAL CITY BANK OF NEW YORK, Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 6142. Argued November 15, 1933.—Decided June 22, 1934.

*Hartzell, Kelly and Hartzell* and *R. O. Fernández,* for appellant. *Benjamin J. Horton, Attorney General* and *M. Rodríguez Serra, Assistant Attorney General* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The National City Bank of New York brought an action

in the District Court of San Juan against Manuel V. Domenech, as Treasurer of Puerto Rico, to recover the sum of $55,018.73 paid under protest, legal interest thereon and costs.

The plaintiff alleged that it was a national banking association organized under the laws of the United States of America, with head offices in New York and authorized to do business in Puerto Rico;

That in March, 1931, it filed with the Treasurer a schedule of its property for the purpose of taxation and that the Treasurer on October 27, 1931, assessed its taxable capital invested in Puerto Rico at $2,658,040, as follows:

| | | |
|---|---|---|
| Land _____ 9,465.12 square meters_____ | | $123, 390. 00 |
| Land _____ 2,174.60 acres _____ | | 52, 650. 00 |
| Buildings _____ | | 392, 940. 00 |
| Total real property_____ | | $568, 980. 00 |
| Other personal property_____ | $1, 993, 820. 00 | |
| Other movables_____ | 95, 240. 00 | |
| Total movables_____ | | $2, 089, 060. 00 |
| Grand total_____ | | $2, 658, 040. 00; |

That the above assessment was made notwithstanding the bank having advised the Treasurer by means of an additional report that, being a national banking association and having paid taxes in Puerto Rico on its net income, it could only be taxed on its real property located in this Island;

That it appealed from the Treasurer's assessment to the Board of Review and Equalization which dismissed the appeal, and that it then, acting under compulsion and fearing a levy on its property, paid under protest on April 9, 1932, the sum of $55,018.73 of the taxes assessed against it. The remaining $14,196.61 of the said taxes, which corresponded to the real property, was paid by it voluntarily;

And that it was exempted from the payment of any tax other than that imposed on real property located in Puerto

Rico under Section 548, Title 12, of the United States Code, fully transcribed in the complaint.

In short, the plaintiff maintained that under the national statute, taxes could only be assessed against it in Puerto Rico on the sum of $568,980 at which was assessed its real property located in the Island, there being exempted from taxation the "other personal property" and the "other movables" which it owns in this Island and which were assessed at $2,089,060.

The defendant pleaded that the complaint did not state facts sufficient to constitute a cause of action and it was so found by the court in a judgment rendered on June 25, 1932, from which the plaintiff bank took the present appeal. It has assigned in its brief eight errors as follows:

"1. The district court erred in setting forth as one of the grounds for its decision the failure of the complaint to allege that the provisions of the federal statute on taxation against national banks are applicable to Puerto Rico.

"2. The district court erred in holding that the federal statute on taxation against national banks is only applicable to the 'States.'

"3. The district court erred in applying to the case at bar the doctrine laid down in Dávila v. District Court, decided by this Hon. Supreme Court, in so far as it refers to the applicability to Puerto Rico of the federal statutes.

"4. The district court erred in holding that the federal statute on national banks considers the dependencies or insular possessions on the same level with foreign countries as regards taxation on said banks.

"5. The district court erred in holding that 'if the Federal Government can not at all declare any national banking institution or association exempt from taxation in a foreign country, it can not either do so by implication as regards the insular dependencies or possessions.'

"6. The district court erred in holding that by virtue of the provisions in regard to taxation of the Political Code of Puerto Rico which have been in force since 1902 and the rule of uniformity of taxation contained in the Organic Act, the provisions of federal statutes in regard to taxation of national banks are not applicable to Puerto Rico.

"7. The district court erred in holding that the provisions of federal statutes regarding taxation of national banks are not applicable to Puerto Rico.

"8. The district court erred in failing to hold that if the provisions of federal statutes as regards taxation of national banks are not applicable to Puerto Rico, no national bank can then be taxed in any manner in Puerto Rico."

The district court delivered an opinion in support of its judgment from which we transcribe as follows:

"The law relied on by the plaintiff is Section 548, Title 12, United States Code, which appears on page 366 of the United States Code Annotated. The above section is fully transcribed in the complaint and a cursory glance at the heading thereof is sufficient to show that it exclusively aims at the 'States' and that it refers and applies to such governmental organizations. The first paragraph of that section reads as follows: 'The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits;' and further on, the States are authorized by Congress: (1) to tax said shares, or (2) to include dividends derived therefrom in the taxable income of the owner or holder thereof, or (3) to tax the next income of such associations. The third paragraph of the section under consideration textually provides that nothing therein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as any other real property is taxed. But there is no allegation whatever as to the applicability to Puerto Rico of the above provisions of Section 548, nor is it so provided in any of the Sections thereof. The authority to exempt national banks from taxation is conferred on legislatures of the States or of subdivisions thereof. Taxes on property in Puerto Rico are collected in accordance with the provisions of the Political Code. This legal statute has been in force since 1902, with the amendments thereto enacted by the Insular Legislature. On March 2, 1917, there was enacted by the Congress of the United States an Act entitled: 'An Act to provide a Civil Government for Porto Rico, and for other purposes,' whereby authority was conferred on the Insular Legislature to levy taxes with the limitation that laws in that respect must be uniform. At the time the above Act was enacted in 1917 the Political Code

was already in force and this legal statute is ratified by Section 57 of the Organic Act approved March 2, 1917. Recently, our highest tribunal in its decision in *Dávila* v. *District Court,* dated May 27 last, laid down the doctrine that any federal statute which does not expressly provide that it is applicable to Puerto Rico shall be construed as not being so applicable. The above decision from the Supreme Court cites also some Insular cases and lastly it brought out the very remarkable circumstance that each time the Federal Congress has meant to make extensive to Puerto Rico any Federal legislation it has done so by using the words 'Puerto Rico,' or insular, possessions, or in any other manner. Section 601 of the bank law under discussion also provides that any national banking association possessing a capital and surplus of $1,000,000 or more may establish branches in foreign countries or dependencies or insular possessions of the United States to further foreign trade, and to act if required to do so as fiscal agents of the United States. This Section appears on page 484 of the work already mentioned. It is clearly seen that the intention of Congress has been to place the dependencies or insular possessions on the same level as foreign countries, and if the Federal Government is at all unable to exempt any national banking institution or association from the payment of taxes in a foreign country, it can not do so either by implication as regards the dependencies or insular possessions. If such had been its intention, it would have so stated in a clear and specific manner. Section 290 of the Political Code makes it incumbent upon the Treasurer to assess and tax all property not expressly exempted from taxation and in the exercise of that duty the Treasurer could very well levy the tax objected to by the plaintiff.''

We agree with the appellant that it was unnecessary expressly to allege in the complaint that the provisions of Section 548 of the United States Code were applicable to Puerto Rico.

As stated in Corpus Juris, summing up the jurisprudence:

''As elsewhere shown, all state courts take judicial notice of the public statutes of the United States. Hence it is not necessary to plead a federal statute in order to invoke the benefit thereof in an action in a state court. The laws of Congress are not foreign laws but are the laws of the land, and not like the statutes of sister states which must be pleaded and proved in order to be available.'' 59 C. J. 1198.

"Where a public statute is applicable to a case, it is sufficient that the pleading of the party who seeks to rely upon the statute shall set forth the facts which bring the case within it; and it is not necessary to recite the title of the act or its number or date of passage, or otherwise designate or even refer to it. It is, however, indispensable that the pleading should state facts which show a cause of action or defense under the statute in order to invoke the benefit thereof." 59 C. J. 1199.

We also agree with the appellant that the statute under consideration is not only applicable to those States which are already admitted into the Union but to the territories as well. It was so decided many years ago by the Supreme Court of the United States in *Talbott* v. *Silver Bow County*, 139 U. S. 438, in which it was held, copying from the syllabus:

"The territories possess the same power of taxing national banks which States enjoy.

"Section 1003 of chapter 53 of the fifth division of the Revised Statutes of Montana Territory, as amended by the Act of February 22, 1881, Laws of 1881, p. 67, is not in conflict with Rev. Stat., sec. 5219.

"Under the general Territorial system, as expressed in the various organic acts, the power of taxation is absolute, save as restricted by the Constitution or congressional enactments."

In the course of the opinion, the court through Mr. Justice Brewer, expressed itself as follows:

"These various provisions, scattered through the entire body of the statute respecting national banks, emphazise that which the character of the system implies—an intent to create a national banking system coextensive with the territorial limits of the United States, and with uniform operation within those limits, to establish everywhere throughout the United States banks with the security which a national examination gives, and furnish a currency of uniform value, the same in Arizona as in New York, in Territory as in State. Given a system of such national character, and such uniform and universal operation through the entire territorial limits of the country, before any particular section of the statute creating it shall be tortured into creating a discrimination and difference in privileges and burdens by reason of locality, its language must im-

peratively demand such construction. Were it claimed that it permitted local taxation east of the Alleghanies and forbade it west, even if the power of Congress in respect to such a discrimination were conceded, the section invoked to justify such a contention would have to be clear and imperative in its language. Differences arising from mere adaptation to local statutes is one thing, while discrimination by reason of locality, or political organization, is another, and essentially diverse. It does not conflict with the national character of the system that the banks of the various States and Territories may charge and receive a rate of interest allowed by local statutes; that is merely the adaptation of the system to the laws and customs of the various States; but it would militate much against its national character if banks organized under it were subjected to local taxation in one part of the Union, and exempted from its elsewhere. No such intent ought lightly to be imputed to Congress.

"

"Still further, while the word State is often used in contradistinction to Territory, yet in its general public sense, and as sometimes used in the statutes and the proceedings of the government, it has the larger meaning of any separate political community, including therein the District of Columbia and the Territories, as well as those political communities known as States of the Union. Such a use of the word State has been recognized in the decisions of this court. Thus, in the early case of *Hepburn* v. *Ellzey,* 2 Cranch, 445, 452, Chief Justice Marshall observed: 'On the part of the plaintiffs it has been urged that the District of Columbia is a distinct political society; and is, therefore, "State", according to the definitions of writers on general law. This is true.' In *Metropolitan Railroad* v. *District of Columbia,* 132 U. S. 1, 9, Mr. Justice Bradley, speaking for the court, declared that 'it is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a State.' And in the case of *Geofroy* v. *Riggs,* 133 U. S. 258, 268, a similar construction was given to the use of the word 'State,' and in a clause which seemed on the face to carry a narrower meaning than the language used in section 5219, supra. The clause was found in a treaty between France and the United States, and that clause was as follows: 'In all the States of the Union, whose existing laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing

personal and real property by the same title and in the same manner as the citizens of the United States.' On the face of the language, the word 'State' would seem to refer, not to political communities in general, but to those particular communities which form the States of the Union; yet it was held to include the District of Columbia, this court, by Mr. Justice Field, observing: 'This article is not happily drawn. It leaves in doubt what is meant by "States of the Union." Ordinarily these term would be held to apply to those political communities exercising various attributes of sovereignty which compose the United States, as distinguished from the organized municipalities known as Territories and the District of Columbia. And yet separate communities, with an independent local government, are often described as States, though the extent of their political sovereignty be limited by relations to a more general government or to other countries. Halleck on Int. Law, c. 3, secs. 5, 6, 7. The term is used in general jurisprudence and by writers on public law as denoting organized political societies with an established government. Within this definition the District of Columbia, under the government of the United States, is as much a State as any of those political communities which compose the United States.' ''

The Supreme Court of the United States itself has decided, in reference to Puerto Rico:

''It may be justly asserted that Porto Rico is a completely organized Territory, although not a Territory incorporated into the United States, and that there is no reason why Porto Rico should not be held to be such a Territory as is comprised in sec. 5278.'' *Kopel* v. *Bingham*, 211 U. S. 468, 476.

''We are of opinion that the act does extend to Porto Rico. It is true that the term, 'possessions' of the United States is not used as in the Liability Act. The act does, however, provide that the former acts of which it is amendatory 'shall be held to apply to common carriers by railroad in the Territories and the District of Columbia,' etc. Though for all purposes the Island of Porto Rico has not been fully incorporated into the United States, it obviously is not foreign territory, nor its citizens aliens. *González* v. *Williams*, 192 U. S. 1, 15. Its organization is in most essentials that of those political entities known as Territories. It has a territorial legislature and a territorial system of courts. By the fourteenth section of the Foraker Act of April 12, 1900, 31 Stat., 77, 80, c.

191, 'the statute laws of the United States not locally inap-plicable . . . have the same force and effect in Porto Rico as in the United States, except the revenue law." Am. R. R. Co. of Porto Rico v. Didricksen, 227 U. S. 145, 148.

And this Supreme Court of Puerto Rico, not long ago, in the case of *The Federal Land Bank of Baltimore,* v. *Dis-trict Court of Aguadilla,* 45 P.R.R. ____, through Mr. Justice Córdova, said:

"The word 'State' may refer to a State of the American Union within the Constitution and to a political entity duly organized, not necessarily either as a State or as a Territory or District under the Government of the United States.

".             .        ~      .         .         .        .         .

"Puerto Rico is a sovereign political entity. It has its Gov-ernor, its Legislature, its Judicial Power, and in general all the attributes of an independent political organization. It has been declared to be an Organized Territory and it is a State of the American Union in the widest sense of the word . . . "

Now, it is not only by virtue of the foregoing that it can be maintained that the law is in force in Puerto Rico. It is also in force because it has been so prescribed by Con-gress in Section 9 of our Organic Act, to wit:

"Section 9.—That the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the internal-revenue laws: *Provided, however,* That hereafter all taxes collected under the internal-reve-nue laws of the United States on articles produced in Porto Rico and transported to the United States, or consumed in the Island shall be covered into the Treasury of Porto Rico."

We fail to see any reason why the law in question be locally inapplicable, nor have we been cited any act of Congress in which it is prescribed directly or indirectly that the said act is not applicable to Puerto Rico. On the con-trary, the trial judge himself makes reference in his opinion to Section 601 of the said statute authorizing any national banking association possessing a capital and surplus of

$1,000,000 or more to establish branches in foreign countries or insular possessions and to act as fiscal agents of the United States, although he maintains that that shows that it was the intention of Congress to place the insular possessions on the same level as foreign countries.

As it is a statutory law of the United States, no specific provision was really required for it to be in force in Puerto Rico. We think, therefore, that the special provision therein contained, in so far as the same is applicable to Puerto Rico, can only be construed in the sense that it was the intention of Congress to enable national banks in the insular possessions and in foreign countries, as regards the requisites of capital and way of operating, to act as fiscal agents of the United States, but nothing more.

The fact that the bank operates in this Island, in accordance with the law, through a branch, does not make that branch a separate entity so as to render inapplicable the law invoked for the purpose of taxation. In *Sokoloff* v. *The National City Bank of New York,* 224 New York Supplement 102, affirmed in 227 New York Supplement 907, it was held that although a branch of a national bank established in accordance with the provisions of Sections 601 to 605, Title 12, United States Code, is a separate entity from the parent bank as regards business transactions, yet it is not an independent agency but is subject to supervision of the parent bank which owns the property and assets of the branch and is ultimately liable for its debts.

There is no force either in the argument that the assessment was made in pursuance of the provisions of the Political Code of Puerto Rico as approved by the Legislature of this Island, since the laws of Puerto Rico are enforceable in so far as they are not in conflict with those of Congress.

Recently the Circuit Court of Appeals for the First Circuit, deciding, on May 18, 1934, a case on appeal from the United States District Court for the District of Puerto Rico, No. 2896, similar to the case at bar, *The National City Bank*

*of New York,* plaintiff and appellant, v. *Manuel V. Dome-nech, Treasurer,* defendant and appellee, stated:

"As New York, where the plaintiff bank is located, is the state or political subdivision permitted to assess a tax against the bank under Section 5219, the tax assessed against its personal property by Puerto Rico was not authorized. Congress has never, specifically or even by implication, authorized the imposition of such a tax upon a national banking association and had no reason to believe, from an examination of Section 320 of the Political Code of Puerto Rico of March 1, 1902, as amended by the Act of September 3, 1910 (Revised Stat. and Codes of Puerto Rico, 1911 (2972) Sec. 320), that Puerto Rico contemplated the imposition of any such tax. All that could be gathered from that section of the Code was that Puerto Rico proposed to tax all the shares of banking institutions existing by authority of the United States 'located and doing business within Puerto Rico', as it was authorized to do by section 5219. But Puerto Rico in this case did not even attempt to assess the shares of the bank, and for the very good reason that the banking association was not located in Puerto Rico and consequently the shares were not there so that it could impose a tax upon them".

Having reached the foregoing conclusions, it will be sufficient to state as regards the decision in *Dávila* v. *District Court,* 43 P.R.R. 532, that that case has its peculiar features and rests on its own grounds; and although we think that the district court gave to the doctrine laid down therein a scope which it lacks, we will say, in order to avoid further confusion, that any part thereon that might be in conflict with the conclusions reached herein must be understood as being overruled.

There, only remains to be considered a peculiar circumstance in the present case, to wit, whether in view of the fact that the plaintiff bank had furnished, in the schedule of its property filed with the Treasurer, data covering all its property in Puerto Rico, said bank is barred from appealing from the assessment made on all that property and the consequent taxation thereof.

The bank alleged that it had done so by mistake and had duly cleared up the matter before the assessment was made.

Under the circumstances of the case, the above action of the bank is no bar to its subsequent claim.

". . . It has been held that the capital of a bank is not subject to state taxation. If the bank gave in its capital for taxation, it is not estopped now from refusing to pay the same. It would be the same as listing property exempt from taxation, and there is no reason of justice or public policy which would preclude the bank from refusing to pay the same. *Cooley, Tax'n,* 263, 264; *Dunnell Manuf'g Co.* v. *Inhabitants of Pawtucket,* 7 Gray, 277; *City of Charlestown* v. *Middlesex Co. Com'rs,* 109 Mass. 270." *Brown* v. *French,* 80 Fed. 166, 168.

Therefore, as it is expressly provided in Section 548, Title 12, of the United States Code in force in Puerto Rico, that: "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may tax said shares, or include dividends derived therefrom in the taxable income of an owner or holder thereof, or tax the income of such associations, provided the following conditiosn are complied with: 1. (*a*) The imposition by said State of any one of the above three forms of taxation shall be in lieu of the others . . . 3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed;" as the plantiff national bank is located in the State of New York and has extended its business to Puerto Rico, and as taxes have been levied in Puerto Rico against it on the basis of its net income, it could only be further taxed on its real property located in the Island. Therefore, the levying of taxes upon its other personal property was not justified under the law.

The judgment appealed from must be reversed and the case remanded to the proper district court for further proceedings not inconsistent with the principles laid down in this opinion.