# PEOPLE OF THE STATE OF NEW YORK *ex rel.* KOPEL *v.* BINGHAM, POLICE COMMISSIONER OF THE CITY OF NEW YORK.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 167. Argued October 26, 1908.—Decided January 4, 1909.

Under § 17 of the act of April 12, 1900, c. 191, 31 Stat. 77, 81, the governor of Porto Rico has the same power that the governor of any organized Territory has to issue requisitions for the return of fugitive criminals under § 5278, Rev. Stat.

While subd. 2, § 2, Art. IV, Const. U. S., refers in terms only to the States, Congress, by the act of February 12, 1793, c. 7, 1 Stat. 302, now § 5278, Rev. Stat., has provided for the demand and surrender of fugitive criminals by governors of Territories as well as of States, and the power to do so is as complete with Territories as with States. *Ex parte Reggel*, 114 U. S. 642.

Section 5278, Rev. Stat., will not be construed so as to make territory of the United States an asylum for criminals, and that section is not locally inapplicable to Porto Rico within the meaning of § 14 of the act of April 12, 1900, c. 191, 31 Stat. 77, 80.

Porto Rico, although not a Territory incorporated into the United States, is a completely organized Territory.

189 N. Y. 124, affirmed.

THE facts are stated in the opinion.

*Mr. Alfred R. Page* for plaintiff in error:

Extradition between States, Territories´ and countries subject to the jurisdiction of the United States depends solely on the provisions of the Constitution of the United States and the acts of Congress. There is no reserve power in the State to surrender a fugitive as a matter of favor or comity. *Corkran* v. *Hyatt,* 172 N. Y. 183; *S. C.,* aff'd, 188 U. S. 691.

This case does not come within any of the four provisions of law for extradition between Porto Rico and the State of New York.

There are four distinct provisions of law authorizing extradition of an alleged fugitive from justice, none of which applies to this case.

1. Extradition between States upon the demand of the governor of one State upon the governor of another. Const. U. S., Art. IV, § 2.

2. Extradition between States and Territories of the United States upon the demand of the governor. Rev. Stat., §§ 5278, 5279.

3. Extradition between foreign countries or Territories occupied by or under the control of the United States and other parts of the United States, on demand of the chief executive officer upon the Secretary of State of the United States. Rev. Stat., § 5270, as amended June 6, 1900.

4. Extradition between States, Territories and Districts or insular possessions under special statutes. Dist. of Col., Rev. Stat. D. C., § 843; Indian Territory, Act of Congress, May 2, 1890, Rev. Stat., § 14; Philippine Islands, c. 529, Laws of U. S., 1903; c. 454, Laws of U. S., 1905; Alaska (when same´ was a District), c. 429, Laws 1899.

To these might be added the right of removal of a person charged with an offense against the laws of the United States when indicted in the United States court from the District in which he was apprehended to the District in which he was indicted. Rev. Stat., § 1014.

This case does not come within the provisions of the Con-

stitution, because Porto Rico is not a State. Nor under § 5270, Rev. Stat., as the proceedings were not had through the Secretary of State; nor is there any special statute providing for extradition for Porto Rico; the proceedings in this case were had under §§ 5278 and 5279, which do not apply, as Porto Rico is not a Territory of the United States.

The word "territory" as used in § 5278, Rev. Stat., does not mean "The entire domain over which a sovereign state exercises jurisdiction as by right of sovereignty; as within United States territory," but it means "a division of the national domain of the United States that by Act of Congress has been organized under a separate government in the expectation that it or some part thereof will ultimately be admitted into the Union as a State; as Arizona is a territory." Standard Dictionary; *Ex parte Lane*, 135 U. S. 443, 447; *Ex parte Morgan*, 20 Fed. Rep. 304; *Thompson* v. *Utah*, 170 U. S. 343, 346, and cases cited.

Porto Rico possesses none of the attributes necessary to constitute a Territory. A resident of Porto Rico is not and cannot become a citizen of the United States, and his children, even though born after the island was acquired, do not become citizens of the United States.

That Porto Rico is not a Territory, is recognized by the organic act, 31 Stat. 77. Provisions in that statute would be unnecessary if Porto Rico was a Territory of the United States.

The acts of Congress relating to extradition cannot be extended by construction to apply to places other than those specified in the acts themselves.

In addition to States and Territories, it is a well-recognized fact that there exists territory occupied by and under the jurisdiction of the United States, which is not covered by either the designation of a State or Territory. *Downes* v. *Bidwell*, 182 U. S. 244; *Hawaii* v. *Mankichi*, 190 U. S. 197; *Dorr* v. *United States*, 195 U. S. 138.

Sections 5278 and 5279 are not applicable to Porto Rico, because it is neither a State nor a Territory of the United States,

and hence by the terms of the statute itself are made inapplicable and are therefore "locally inapplicable."

*Mr. Robert C. Taylor,* with whom *Mr. Robert S. Johnstone* was on the brief, for defendant in error:

The word "territory" in § 5278, Rev. Stat., comprehends all Territories which are organized in fact.

Porto Rico is an organized Territory in the full sense of the word and is necessarily contemplated by § 5278, Rev. Stat. *Ex parte Lane,* 135 U. S. 443; Foraker Act (chap. 191, 31 Stat. 77); *In re Kopel,* 148 Fed. Rep. 505, 507; *National Bank* v. *County of Yankton,* 101 U. S. 129, 133; *Ex parte Morgan,* 20 Fed. Rep. 298, 305; 28 Am. & Eng. Enc. of Law (2d ed.), 57, and cases cited; *Gonzales* v. *Williams,* 192 U. S. 15; *Garzot* v. *De Rubio,* 209 U. S. 283.

In any event, the powers given to the governor of Porto Rico by § 17 of the Foraker Act show that Congress expressly intended that Porto Rico, by virtue of these powers, should have the right to demand the extradition of fugitives under § 5278. *People ex rel. Kopel* v. *Bingham,* 189 N. Y. 124; *S. C.,* aff'g, 117 App. Div. 411; *In re Kopel,* 148 Fed. Rep. 505, 508.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

September 11, 1906, Kopel was taken into custody by defendant in error Bingham, who is the police commissioner of the city of New York. The arrest was made in pursuance of a rendition warrant issued by the governor of the State of New York, which recited that Kopel was charged with having committed embezzlement in Porto Rico; that he had fled therefrom and taken refuge in New York, and that his return had been lawfully demanded by the governor of Porto Rico.

Kopel thereupon sued out a writ of *habeas corpus* from the Supreme Court of the State of New York. Bingham made

return to the writ, and set up the rendition warrant as his authority for detaining the prisoner. Kopel demurred to the return as insufficient in law, and that the governor's warrant had been issued without authority, etc. The matter coming on at special term before Truax, J., the demurrer was overruled and the writ dismissed, and the police commissioner directed to deliver Kopel to the agent of Porto Rico, to be conveyed back to Porto Rico.

From this order Kopel appealed to the Appellate Division of the Supreme Court in the First Department, and the order of Judge Truax was unanimously affirmed.

Kopel then appealed to the Court of Appeals, which affirmed the order below. The record was remitted to the Supreme Court, to be proceeded upon according to law, and thereupon the order of the Court of Appeals was made the order of the Supreme Court, whereby it was ordered that the original order of the Supreme Court which had been affirmed should be enforced and carried into execution and effect. To this order upon the remittitur this writ of error is addressed.

The questions involved are whether the governor of Porto Rico had power and authority to make a requisition upon the governor of the State of New York for the arrest and surrender of the fugitive criminal of Porto Rico who had taken refuge in the State of New York, and whether the governor of the State of New York had power and authority to honor such requisition and to issue his rendition warrant for the arrest and surrender of such fugitive.

Section 5278 of the Revised Statutes reads as follows:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony or other crimes, certified as authentic by the governor or chief magistrate of the State or Territory from whence the

person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to such agent when he shall appear. . . ."

By § 827 of the Code of Criminal Procedure of New York it is provided:

"It shall be the duty of the governor, in all cases where by virtue of a requisition made upon him by the governor of another State or Territory, any citizen, inhabitant or temporary resident of this State is to be arrested as a fugitive from justice . . . to issue and transmit a warrant for such purpose to the sheriff of the proper county . . . (except in the city and county of New York, where such warrant shall only be issued to the superintendent or any inspector of police). . . . Before any officer to whom such warrant shall be directed or intrusted shall deliver the person arrested into the custody of the agent or agents named in the warrant of the governor of this State, such officer must, unless the same be waived, as hereinafter stated, take the prisoner or prisoners before a judge of the Supreme Court or a county judge, who shall, in open court, if in session, otherwise at chambers, inform the prisoner or prisoners of the cause of his or their arrest, . . ." and that he or they may have a writ of *habeas corpus* upon filing an affidavit to the effect that he or they are not the person or persons mentioned in said requisition.

By § 14 of the Organic Act of Porto Rico, commonly called the Foraker Act, it is provided that "the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the internal revenue laws," etc. 31 Stat. 80; chap. 191.

Section 17 provides that the governor "shall at all times faithfully execute the laws, and he shall in that behalf have

all the powers of governors of the Territories of the United States that are not locally inapplicable."

Among the powers of governors of Territories of the United States is the authority to demand the rendition of fugitives from justice under § 5278 of the Revised Statutes, and we concur with the courts below in the conclusion that the governor of Porto Rico has precisely the same power as that possessed by the governor of any organized Territory to issue a requisition for the return of a fugitive criminal. *People &c. ex rel. Kopel* v. *Bingham, Police Commissioner*, 189 N. Y., 124; *S. C.*, 117 App. Div. 411. It was so held by Judge Hough, of the District Court of the United States for the Southern District of New York, in passing upon a similar application by this same relator. *In re Kopel*, 148 Fed. Rep. 505.

Subdivision 2 of § 2 of Art. IV of the Federal Constitution refers in terms to the States only, but the act of Congress of February 12, 1793, carried forward into § 5278 of the Revised Statutes, made provision for the demand and surrender of fugitives by the governors of the Territories as well as of the States, and it was long ago held that the power to extradite fugitive criminals as between State and Territory is as complete as between one State and another. *Ex parte Reggel*, 114 U. S. 642, 650. If § 5278 does not apply, no other statute does. And as to §§ 14 and 17 of the Foraker Act, no contention is made that they are locally inapplicable, except as it is argued that § 5278 of the Revised Statutes is not applicable at all, because Porto Rico is not a "Territory," as that word is used therein. We quite agree with Judge Hough that "to allege that the only existing law under which a Porto Rican fugitive from justice can be returned thereto from the United States is 'locally inapplicable' would be to make a jest of justice."

It is impossible to hold that Porto Rico was not intended to have power to reclaim fugitives from its justice, and that it was intended to be created an asylum for fugitives from the United States.

In the case of *Ex parte Morgan*, 20 Fed. Rep. 298, 305, the

question involved was the right of the governor of Arkansas to honor a requisition for the surrender of a fugitive criminal received from the principal chief of the Cherokee Nation, and the court, in holding that the governor was not authorized to honor such a requisition, for the reason that the chief of the Cherokee Nation was not the executive authority of any "State" or "Territory," inasmuch as the Cherokee Nation or Indian Territory was not an organized government, with an executive, legislative and judicial system of its own, but was exclusively under the jurisdiction of the United States, defined a Territory within the meaning of the extradition statute as follows:

"A portion of the country not included within the limits of any State, and not yet admitted as a State into the Union, but organized under the laws of Congress with a separate legislature under a territorial governor and other officers appointed by the President and Senate of the United States."

In the case of *In re Lane*, 135 U. S. 443, the accused was charged with the commission of an offense "within that part of the Indian Territory commonly known as Oklahoma." He was tried and convicted upon an indictment, found under an act of Congress, which excepted the "Territories" from its operation; and it was claimed that Oklahoma, which was then a part of the Indian Territory, was a Territory and came within the exemption of the act. But the court, Miller, J., said:

"But we think the words 'except the territories' have reference exclusively to that system of organized government, long existing within the United States, by which certain regions of the country have been erected into civil governments. These governments have an executive, a legislative and a judicial system. They have the powers which all these departments of government have exercised, which are conferred upon them by act of Congress, and their legislative acts are subject to the disapproval of the Congress of the United States. They are not in any sense independent governments; they have no Senators in Congress and no Representatives in the lower

house of that body, except what are called Delegates, with limited functions. Yet they exercise nearly all the powers of government, under what are generally called organic acts passed by Congress conferring such powers on them. It is this class of governments, long known by the name of Territories, that the act of Congress excepts from the operation of this statute, while it extends it to all other places over which the United States have exclusive jurisdiction.

"Oklahoma was not of this class of Territories. It had no legislative body. It had no government. It had no established or organized system of government for the control of the people within its limits, as the Territories of the United States have and have always had. We are therefore of opinion that the objection taken on this point by the counsel for prisoner is unsound."

Oklahoma was given a territorial government by the act of May 2, 1890, 26 Stat. 81, §§ 1 to 100, chap. 182.

In *Gonzales* v. *Williams*, 192 U. S. 15, the court unanimously held that a citizen of Porto Rico was not an alien immigrant, and among other things an opinion of Attorney General Knox, relating to a Porto Rican named Molinas, was quoted from as follows:

"He [i. e., Molinas] is also clearly a Porto Rican; that is to say, a permanent inhabitant of that island, which was also turned over by Spain to the United States. As his country became a domestic country and ceased to be a foreign country within the meaning of the tariff act above referred to, and has now been fully organized as a country of the United States by the Foraker act, it seems to me that he has become an American, notwithstanding such supposed omission."

It may be justly asserted that Porto Rico is a completely organized Territory, although not a Territory incorporated into the United States, and that there is no reason why Porto Rico should not be held to be such a Territory as is comprised in § 5278.

*Order affirmed.*