THE UNITED THEATRES, INC., ETC., Petitioner, *v.* DISTRICT
COURT OF SAN JUAN, ETC., ET AL., Respondents.

No. 986.   Argued July 20, 1934.—Decided December 10, 1934.

*J. Henri Brown, C. Ruiz Nazario, G. E. González,* and *G. Benítez
Gautier* for petitioners.   *Marcelino Romaní, District Attorney,* for
respondents.   *Martínez Nadal, Navarro . Ortiz & Llorens Torres*
for intervener.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The People of Puerto Rico brought a suit for injunctive
and other relief under an act of the Insular Legislature en-
titled "An Act to protect trade and commerce against un-
lawful restraints and monopolies", approved March 14, 1907
(Session Laws 328).   A district court issued a temporary
restraining order, and an order to show cause why it should
not be continued in force.   In response to the order to show
cause defendants challenged the jurisdiction of the court and
moved to set aside the restraining order.   This the court re-
fused to do upon the authority of *Dávila* v. *The District
Court of Mayagüez,* 43 P.R.R. 532.

In the Dávila case, this court, referring to its pre-
vious decision in *People* v. *Galanes,* 15 P.R.R. 365, said:

"At the time of that decision this court had some idea Porto
Rico, although not an incorporated territory, was to be regarded as

a territory of the United States, to which general statutes might be applicable. After the decisions of the Supreme Court of the United States in *People* v. *Muratti,* 245 U. S. 639, and *Balzac* v. *People of Porto Rico,* 258 U. S. 298, we think that it is settled law that Porto Rico, although organized, is not an incorporated territory.

"In each of the Organic Acts the following appears:

" 'That the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the internal revenue laws. . . .' Section 14 of the Foraker Act; Section 9 of the Jones Act.

"Under the foregoing decisions of the United States Supreme Court a general law of the United States applicable to 'territories' would not include an unincorporated territory like Porto Rico unless Congress indicated such an intention. *González* v. *People of Porto Rico,* 51 Fed. (2d) 61, also seems to be applicable.

"We agree with the court below that the Sherman Act is not applicable to Porto Rico by its terms. We find nothing in its provisions to show that Congress intended to cover a crime committed in Porto Rico."

The Sherman Act, supplemented as it was in 1914 by the Clayton Act, covers the entire ground of the local law. The question is as to whether or not it is "locally inapplicable". After further consideration, we are unable to adhere to the conclusion reached in *Dávila* v. *The District Court.*

It is "settled law that Porto Rico, although organized is not an incorporated territory". It does not follow that "the statutory laws of the United States" must be regarded as "locally inapplicable" in the absence of a contrary intention indicated by Congress at the time of the passage of the law in question.

In *Balzac* v. *People of Porto Rico,* 258 U. S. 298, the question was "whether that part of the Sixth Amendment to the Constitution, which requires that, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall

have been previously ascertained by law, applies to Porto Rico." This and other Constitutional provisions for jury trial had been held to apply either *ex proprio vigore* or as the result of Congressional action to criminal prosecutions in the "territories of the United States" but not to operate as a limitation upon the powers of Congress in legislating for unincorporated territory. More than fifteen years before the date of the decision in *Balzac* v. *People of Porto Rico,* and more than a decade before the passage of the Jones Act, the Supreme Court, in *Rassmussen* v. *United States,* 197 U. S. 516, 519, had said:

"At the bar the Government did not deny that offenses of the character of the one here prosecuted could only be tried by a common law jury, if the Sixth Amendment governed. The Government, moreover, did not dispute the obvious and fundamental truth that the Constitut'on of the United States is dominant where applicable. The validity of the provision in question is thereafter sought to be sustained upon the proposition that the Sixth Amendment to the Const'tution did not apply to Congress in legislating for Alaska. And this rests upon two contentions which we proceed separately to consider.

"1. *Alaska was not incorporated into the United States, and therefore the Sixth Amendment did not control Congress in legislating for Alaska.*

"If the premise, that is, the status of Alaska, be conceded, the conclusion deduced from it is established by the previous rulings of this court. In *Dorr* v. *United States,* 195 U. S. 138, the question was whether the Sixth Amendment was controll'ng upon Congress in legislating for the Philippine Islands. Applying the principles which caused a majority of the judges who concurred in *Downes* v. *Bidwell,* 182 U. S. 244, to think that the uniformity clause of the Constitution was inapplicable to Porto Rico, and following the ruling anounced in *Hawaii* v. *Mankichi,* 190 U. S. 197, it was decided that, whilst by the treaty with Spain the Philippine Islands had come under the sovereignty of the United States and were subject to its control as a dependency or possession, those Islands had not been incorporated into the United States as a part thereof, and therefore Congress, in legislating concerning them, was subject only to the provisions of the Constitution applicable to territory occupying that relat'on. The

690

power to acquire territory without incorporating it into the Un'ted States as an integral part thereof, as we have said, was sustained upon the reasoning expounded in the op'nion of three, if not of four, of the judges who concurred in the judgment in *Downes* v. *Bidwell*, that reasoning being in effect adopted in the Dorr case as the basis of the ruling there made, the court saying (p. 143):

" 'Until Congress shall see fit to incorporate territory ceded by treaty into the United States, we regard it as settled by that decision (*Downes* v. *Bidwell*) that the territory is to be governed under the power existing in Congress to make laws for such territor'es and subject to such constitutional restrictions upon the powers of that body as are applicable to the situation.'

"And in view of the status of the Philippine Islands it was decided that the Sixth Amendment was not applicable to those Islands, and therefore Congress, when it legislated concerning them, was not controlled by the provisions of that Amendment. It would serve no useful purpose to reexpress the reasons supporting this conclusion, and we content ourselves with quoting the summing up mode by the Court in the opinion in the Dorr case, as follows (p. 149):

" 'We conclude that the power to govern territory, implied in the right to acquire it, and given to Congress in the Constitution in Article IV, Section 3, to whatever other limitations it may be subject, the extent of which must be decided as quest'ons arise, does not require that body to enact for ceded territory, not made a part of the United States by Congressional action, a system of laws which shall include the right of trial by jury, and that the Constitut'on does not, without legislation and of its own force, carry such right to territory so situated.' "

In the Rassmussen case the controversy was at an end when it was shown that Alaska was an incorporated territory and, that the provisions of the Constitution were therefore operative. In the Balzac case when it was shown that Congress in 1917 had not converted Puerto Rico already a completely organized territory, into an incorporated territory, the controversy was likewise at an end. In the case at bar, the result depends on other considerations.

If it be true that Congress in the Sherman Act did not indicate that the words "any Territory of the United States" were intended to include unincorporated territory, that omis-

sion is a matter of minor importance. Nevertheless, we may note in passing that the Sherman Law was enacted in 1890, some ten years before the question as to the status of unincorporated territory became acute. The words "any Territory of the United States" would naturally include any such territory subsequently acquired and organized. Taking into consideration the fact that, as pointed out in the Balzac case "the distinction between acquisition and incorporation was not regarded as important, or at least . . . was not fully understood", it is perhaps a fair inference that Congress intended to include all territory subsequently acquired and organized. Certainly there is no more evidence of an intention to exclude unincorporated territory subsequently acquired and organized than there is of an intention to include such territory in the expression "any Territory of the United States." For the purposes of this opinion it may be conceded without holding that Congress in 1890 did not intend to include in the phrase "any Territory of the United States" unincorporated territory subsequently acquired. The question now is whether the Sherman Act is locally inapplicable within the meaning of that phrase as used in our two Organic Acts. With some reluctance we have come to the conclusion that it is "not locally inapplicable".

Congress, in 1900, as well as in 1917, was aware of the fact that Puerto Rico was not an incorporated territory. In the Foraker Act, as in the Jones Act, it was "sedulous to avoid forcing a jury system on a Spanish and civil-law country until it desired it." *Balzac* v. *Porto Rico, supra,* at page 311. Nevertheless, Congress thought that some at least of the "statutory laws of the United States" were "not locally inapplicable". Otherwise, it would not have provided as it did provide in both Organic Acts that "the statutory laws of the United States not locally inapplicable . . . shall have the same force and effect in Porto Rico as in the United States." It also thought that such a provision might be

desirable in one unincorporated territory and at the same time undesirable in another. Hence, the express provision in the Organic Act for the Philippines passed in 1902 to the effect that Section 1891 of the Revised Statutes of 1878 should not apply to those islands. *Dorr* v. *United States, supra*, at page 143. In *Kopel* v. *Bingham*, 211 U. S. 468, the Supreme Court held that Puerto Rico, although not a Territory incorporated into the United States, is a completely organized Territory and that Section 5278 of the United States Revised Statutes "was not locally inapplicable" within the meaning of Section 14 of the Foraker Act. This case is ample authority, if authority be needed, for the conclusion that a federal statute enacted before any distinction had been drawn between Territories and unincorporated territories and in terms applicable to any "State or Territory" may be "not locally inapplicable" notwithstanding the fact that Puerto Rico is an unincorporated territory. See also *American Railroad Company of P. R.* v. *Didricksen*, 227 U. S. 145, and *National City Bank* v. *Domenech*, 47 P.R.R.——.

In *Peck Steamship Line* v. *New York & P. R. S. S. Co.*, 2 P. R. Fed. 109, 128, decided in 1906, Judge Rodey, of the United States District Court for Puerto Rico, said:

". . . . It is difficult to see what is locally inapplicable about that portion of the antitrust act applicable to territories. . . . To our mind, for the purposes of this particular decision, it is not important whether as a matter of fact or law, Porto Rico is entirely, within the definit'on of an 'organized territory'. Whether it is sufficiently a territory to come within the terms of Section 3 of the antitrust act aforesaid, which denounces certain acts 'in restraint of trade or commerce in any territory of the United States,' etc., is what is to be decided here.

"Attorney General Knox, in his opinion regarding trademarks, 23 Ops. Atty. Gen. 635, stated: 'Porto Rico has been fully organized under a law of Congress providing the details of its government, and organized, for the most part, upon the plan adopted for the territories contiguous to the states of the Union. The presumption from the whole tenor of this organic act is that a l'beral construction of

the provision extending the laws of the United States would comport with the design of Congress. . .

"Attorney General Griggs, on June 2, 1900, held (23 Ops. Atty. Gen., p. 169) that by virtue of Section 14 of the Foraker Act, the laws of the United States relative to the organization and powers of national banks were extended to Porto Rico. . .

"Hoyt, Acting Attorney General, on July 15, 1902 (24 Ops. Atty. Gen., p. 86), held that the Foraker Act gives force and effect in Porto Rico to the immigration act of Congress of 1882. This latter is a law that was enacted eighteen years previous to the Foraker Act. (p. 10.)

"It is held by the Supreme Court of the United States, in the case of *J. Ribas e Hijo* v. *United States*, 194 U. S. 315, 48 L. ed. 994, 24 Sup. Ct. Rep. 727, that: 'An action which could be brought under the Tucker Act (24 Stat. at L. 505, chap. 359, U. S. Comp. Stat. 1901, p. 752) against the United States, in either a district or a circuit court of the United States, is within the cognizance of the district court of the United States for Porto Rico.' The Tucker Act is a long one, with some fifteen sections in it, and nowhere refers to a territory, yet, under the provisions of the Foraker Act, making all laws of the United States not locally inapplicable, the law in Porto Rico, and giving this court the jurisdiction of a circuit and district court of the United States (Section 34, Foraker Act), the Supreme Court held that it was in force here.

"It would appear that Porto Rico is in fact more of an organized territory than some of the older jurisdictions, because it has what no other territory, save Hawaii, has; that is, a separate court of the United States presumably to enforce United States laws as a part of its jurisdiction, wholly distinct from the local insular courts, which form a complete and ample local system in themselves. . . . .

"In the case at bar, we fail to see how the antitrust act is locally inapplicable in itself. On the contrary, it is locally very applicable and a salutary revision of law that the island badly needs if it is not in force already. We therefore hold that the act of Congress in question, for the purposes of this suit, at least, is not locally inapplicable, under the complaint, and is, or at least that portion of it referring to territories, in full force in Porto Rico. (P. 132.)"

Some six months after the decision in the Peck case, the Insular Legislature, either concurring in the view of Judge Rodey that the Sherman Act, if not already in force in Puerto

Rico, was a salutary statute which the island greatly needed, or else arriving independently at the same conclusion, passed the local antitrust law. Seven years later Congress included Puerto Rico in the Clayton Act. In this there was no coercion. A jury system may be unadvisable and undesirable in "a Spanish and civil-law country." Thus far no reason has been suggested why an antitrust law should be necessarily unsuited to the needs of such a country. In any event both the people of Puerto Rico in 1907 and Congress in 1914 have voiced the opinion that an antitrust law was needed in Puerto Rico. We are not now prepared to say, more than a quarter of a century since the enactment of the local law and some two decades after the passage of the Clayton Act, that both Congress and the Insular Legislature were mistaken and that the Sherman Act is "locally inapplicable". Even if it could be said that the Sherman Act was locally inapplicable in 1900 or in 1907 or in 1914 or in 1917 it would not follow that it is so today. Even without the action of Congress or of the local legislature, recent events, of which we may take judicial notice as a matter of current history, would point to the conclusion that the Sherman Act is not now locally inapplicable.

If the Sherman Act alone covered the entire ground of the local law of 1907 then that law was a futile attempt to regulate matters which were not a rightful subject of legislation. If the local law ever went into effect, it was superseded by the Sherman Act as supplemented and expanded by the Clayton Act. *El Paso & Northeastern Railway Co.* v. *Gutiérrez,* 215 U. S. 87.

We have not overlooked the fact that in the instant case there is no conflict between the local law and the federal statute. It is also true that in the Gutiérrez case there was a conflict between the New Mexico and the Federal Employers' Liability Act. The Supreme Court, however, instead of stressing this aspect of the case, rested its decision squarely on the ground that the Federal statute regulating commerce in the territories had superseded the territorial law on the

same subject. This court, of course, is bound by that decision and the doctrine thereof which does not appear to have been qualified or modified by any subsequent decision of the Supreme Court must control our disposition of the case at bar.

The order of the district court refusing to set aside its previous restraining order, or so much thereof as provides for relief under the terms of the local antitrust law of 1907 as the sole basis for such relief, will be annuled and, giving the People of Puerto Rico the benefit of any doubt that may arise as to certain questions which we have not discussed nor decided herein, the case will be remanded for such further proceedings in the district court as may be within its jurisdiction, proper in the present action, and not inconsistent herewith.

Mr. Justice Wolf dissented.