**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Alejandro Figueroa RIOS,**
**Defendant.**

**Crim. No. 7213.**

United States District Court
D. Puerto Rico, San Juan Division.
April 11, 1956.

which provides as follows: "It shall be unlawful for any person who is under indictment or who has been convicted of a crime of violence or who is a fugitive from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

Section 901(2) of said Title defines interstate or foreign commerce, for the purposes of the chapter thus: "The term 'interstate or foreign commerce' means commerce between any State, Territory or possession (not including the Canal Zone), or the District of Columbia, and any place outside thereof; or between points within the same State, Territory, or possession (not including the Canal Zone), or the District of Columbia, but through any place outside thereof; or *within any Territory or possession* or the District of Columbia."

Defendant has moved to dismiss the indictment for failure to state facts sufficient to constitute an offense under the laws of the United States. His contention is that Puerto Rico is no longer a Territory of the United States and that therefore transportation of firearms, after conviction for a crime of violence (aggravated assault and battery in the case at bar), is *not* covered by Section 902(e) if the transportation be wholly in and within Puerto Rico, now a Commonwealth rather than a Territory or possession. as the term is used in Section 901(2).

Counsel have filed elaborate briefs discussing the present status of Puerto Rico. The United States Attorney adopts the position that as Congress has made no irrevocable renunciation of its "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States", U.S.Const. Art. 4, § 3, cl. 2, Puerto Rico remains a Territory of the United States and enactment of Public Law 600, 81st Congress, 64 Stat. 319, Title 48 U.S.C.A., §§ 731b to 731e, did not by implication exclude transportation of firearms within the Commonwealth of Puerto Rico from

Ruben Rodriguez Antongiorgi, U. S. Atty., San Juan, Puerto Rico, for plaintiff.

Rene Benitez, San Juan, Puerto Rico, for defendant.

RUIZ-NAZARIO, District Judge.

The defendant herein was indicted for violation of Title 15, U.S.C.A., § 902(e),

the scope of Section 901(2) of Title 15, U.S.C.A.

Defendant's counsel on the other hand assumes the position that in view of the complete internal autonomy now enjoyed by Puerto Rico, reference to a territory or possession in Federal legislation must now be judged in the light of the nature of the subject matter and its relation to an interest of a Federal nature, and that any legislation which rests solely on the territorial power of Congress and not arising from any of the granted powers is now inapplicable to Puerto Rico.

The Congress, in the exercise of its Power, under Art. 4, § 3, cl. 2 of the Constitution, "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *", has from time to time created body politics for governing the different areas comprised within said constitutional provision, and the forms of government so created have been stamped both by the Congress and by the Courts, with conventional labels, according to the relative powers of government delegated to each, to the point that categories, not defined in the Constitution proper, have been recognized to exist whenever one form of government is compared with another.

Thus, the Congress and the Courts have been placing in the first category areas said to have the "potentialities of statehood" like unto continental areas to which, pursuant to their organic acts and the interpretation thereof by the Supreme Court, the United States Constitution, including the Bill of Rights, fully applies. The areas falling within this first category have been conventionally labelled "incorporated territories". See, e. g. Rassmussen v. United States, 197 U. S. 516, 25 S.Ct. 514, 49 L.Ed. 862; Granville-Smith v. Granville-Smith, 349 U.S. 1, 75 S.Ct. 553, 99 L.Ed. 773.

In the second category they have included such areas "not thought of as future states", to which pursuant to their organic acts and the interpretation thereof by the Supreme Court, "only some essentials, withal undefined, of the Constitution extended". The areas falling within this second category have been conventionally labelled "unincorporated organized territories". See, e. g. Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088; Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627; Granville-Smith v. Granville-Smith, supra.

Pre-Commonwealth Puerto Rico fell within this second category. See Granville-Smith v. Granville-Smith, supra, 349 U.S. at page 6, 75 S.Ct. at page 556.

A third or rather a sub-category of the second category appears to have arisen as regards such areas which enjoy somewhat limited powers of local government and in which the federal government exercises many local functions which Congress customarily delegates to the local governments of the areas comprised in the first and second categories. The areas falling within this sub-category have been conventionally labelled "possessions" or "insular possessions". See Granville-Smith v. Granville-Smith, supra, 349 U.S. at page 7, 75 S.Ct. at page 556.

This label has been also applied to areas falling within the second category.

The influence of these conventional labels has been such, that even in legislation intended by Congress to be applicable to all areas comprising all the categories above mentioned, these are not designated by the common term "Territory * * * belonging to the United States" used in the Constitution, but by the plurality of conventional labels by which they have become known.

And the situation has reached the point where a statute employing the term territory or territories has been claimed not to apply to other areas similarly labelled, although these are as much "Territory * * * belonging to the United States" within the territorial clause of the Constitution as the other areas conventionally labelled "incorporated or un-

incorporated organized territories." So much so that in People of Puerto Rico v. Shell Co., 302 U.S. 253, at pages 257–258, 58 S.Ct. 167, at page 169, 82 L.Ed. 235, the Supreme Court found it necessary to clarify the situation, as follows:

"But it is evident, from a consideration of the pertinent acts of Congress and the decisions of this court with respect to these acts, that whether Puerto Rico *comes within a given congressional act applicable in terms to a 'territory' depends upon the character and aim of the act.* Words generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed. Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 608, 76 L.Ed. 1204; Helvering v. Stockholms [Enskilda] Bank, 293 U.S. 84, 86, 87, 88, 55 S.Ct. 50, 51, 52, 79 L.Ed. 211. Thus, *although Puerto Rico is not a territory within the reach of the Sixth and Seventh Amendments* and *may not be a 'territory' within the meaning of the word as used in some statutes,* we held in Kopel v. Bingham, 211 U.S. 468, 474, 475, 476, 29 S.Ct. 190, 192, 53 L.Ed. 286, that Puerto Rico was a 'territory' within the meaning of section 5278 of the Revised Statutes [18 U.S.C.A. §§ 3182, 3195], which provides for the demand and surrender of fugitive criminals by governors of territories as well as of states." (Emphasis supplied by this Court.)

The above quoted language leaves no doubt that when Congress in a given statute makes reference to territories as a subject for the application of the statute, it does not follow that the statute is necessarily applicable to all the areas which constitute "Territory * * belonging to the United States" within the constitutional provision, or even to all the areas whose labels bear the term "territory" and that its application thereto entirely "depends upon the character and aim of the act" and the "circumstances under which the words were employed" in it. Thus, the statute may apply to areas within the first category and not apply to areas within the second category, or vice-versa, though both use the word "territory" in their respective labels. And this need not only occur at the time of the adoption of the statute, it may happen at any later date while it remains in force. In other words, a statute making reference to territories may be held originally to be applicable to a given area, though at some future date "the character and aim of the act" and "the circumstances under which the words were employed" may be at such odds with the then existing situation at a given area, that it no longer can be held to apply to the latter, irrespective of the conventional label with which it may have continued to be known.

In the portion of the statute under consideration, the Congress has adhered to the labelling practice above mentioned, under which, the terms territory and possession no doubt have a different or more restricted denotation than the term "territory" as used in Art. 4, § 3, cl. 2 of the Constitution.

Congress, by adhering to the use of the aforesaid labels, has intended to refer to "Territories" and "possessions" in the qualified sense ascribed to said terms by the Supreme Court in the cases above cited and, therefore when a designated label appears to be inapplicable to a designated area under the rule laid down by the Supreme Court in People of Puerto Rico v. Shell Co., supra, said area must be held not to be any longer identified with such label as respects the applicability thereto of the statute in question, although, of course, said area continues to be "Territory" subject to the

provisions of Art. 4, § 3, cl. 2 of the Constitution, and may also continue to be comprised within such label as regards the applicability of any other Federal statute, depending on the character and purpose of the particular statute, as well as the circumstances in which the label is used.

Let us now consider the situation as to the Commonwealth of Puerto Rico, in the light of what has been said above.

Prior to approval of Public Law 600, Puerto Rico, after cession by Spain to the United States, was governed under two Acts of Congress, the Foraker Act [1] and the Jones Act.[2] 48 U.S.C.A. § 731 et seq. Both of these organic acts provided for direct regulation of Puerto Rico and were patently mere delegations of the Constitutional powers of Congress to regulate the territories, and the governments provided thereunder were, both in theory and practice, mere agencies of the Congress. Thus the method of appointment of the governor,[3] appointment of heads of departments,[4] of justices of the Supreme Court, all were provided by Act of Congress, without any intervention by the People of Puerto Rico. The Legislative Assembly,[5] and its procedure for the enactment of laws, all were provided by Act of Congress. Even after a provision, by Sec. 1, 61 Stat. 770, Act of Aug. 5, 1947, authorized election of the Governor by the People of Puerto Rico, the Auditor and Justices of the Supreme Court continued to be appointed by the President. In the event a veto was overriden, the governor transmitted the bill to the President, who could approve or disapprove same. Sec. 34, 39 Stat. 960, 48 U.S.C.A. § 825. All laws had to be reported to Congress, which expressly reserved the power to annul the same, Sec. 34, 39 Stat. 961, 48 U.S.C.A.

§ 826. This requirement was removed by paragraph 128 of Act of May 29, 1928. However, the requirement was restored by Section 1 of Act of Feb. 28, 1929—an example of the exercise, by Congress, of the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States" [6]—a power exercised in that instance even though Puerto Rico, by that time, had been granted legislative power in respect of local matters "as broad and comprehensive as language could make it." People of Puerto Rico v. Shell Co., supra, 302 U.S. at page 261, 58 S.Ct. at page 171.

The Act of February 28, 1929 was indeed typical of the supervisory function of Congress which is impressed on territorial legislatures and which no longer hamstrings the Legislature of Puerto Rico. In defining the word "territory" in Kopel v. Bingham, 211 U.S. 468, 29 S.Ct. 190, 192, 53 L.Ed. 286, the Court used language which described Puerto Rico as organized under the former Organic Acts thus:

> " 'A portion of the country not included within the limits of any state, and not yet admitted as a state into the Union, but organized under the laws of Congress with a separate legislature, under a territorial governor and other officers appointed by the President and Senate of the United States.' "

It does not take any profound argument to show that the above description, so appropriate before the Commonwealth, no longer applies to Puerto Rico. Instead of being organized under the laws of Congress the present government was created by the People of Puerto Rico at a constitutional convention. No reports of laws are made to the President or

---

1. 31 Stat. 77.

2. 39 Stat. 951.

3. Sec. 12, 39 Stat. 955, Sec. 1, 61 Stat. 770, 48 U.S.C.A. § 771.

4. Sec. 13, 39 Stat. 955, Sec. 3, 61 Stat. 771, 48 U.S.C.A. § 775.

5. Sec. 25 to Sec. 34, 39 Stat. 958 to 960, 48 U.S.C.A. § 811 et seq.

6. Art. IV, § 3, cl. 2, Constitution of the U. S.

Congress for the exercise of their supervision. None of the officers are appointed by the President and Senate of the United States. The Commonwealth legislature and governor reign supreme over all matters of local concern.

Emphasis is placed by the government on Sec. 9 of the Federal Relations Act, Title 48 U.S.C.A. § 734, which states that "The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States * * *" as continuing in effect the challenged portion of Sec. 901(2) of Title 15 together with its judicial interpretation in Cases v. United States, 1 Cir., 131 F.2d 916. But as stated by Judge Hoffman in connection with the word territories in Detres v. Lions Building Corporation, D.C., 136 F.Supp. 699, 702, the problem is "not necessarily a matter of repeal by implication, but rather the problem of attempting to determine what Congress intended or would have intended the term 'Territories' to include in Section 1332." (In the case at bar, the terms "Territory or possession" in the challenged portion of Sec. 901(2) Title 15 U.S.C.A.). We are fully justified, in view of the changed situation, in going further and saying that if Congress had foreseen the Commonwealth of Puerto Rico, it would have so varied the language of said portion of Sec. 901(2) as to exclude it from the intra-territorial operation of the Firearms Act. See People of Puerto Rico v. Shell Co., supra, 302 U.S. at page 257, 58 S.Ct. at page 169. If only to be consistent, Congress would not have applied a section for the policing of areas with a classical territorial form of government, directly under Congressional government, to an area with its own constitution, subject to no supervision, in local matters, by the Federal government. Thus, I must conclude that so much of Section 901(2), Title 15 U.S.C.A. as defines "interstate or foreign commerce" as commerce "within any Territory or possession" is now locally inapplicable in Puerto Rico.

In connection with Cases v. United States, supra, it must be added that said case was decided when "the circumstances under which the words ("within any territory or possession") were employed", were different, in connection with "the character and aim of the Act", Federal Firearms Act, 15 U.S.C.A. Chapter 18, Sections 901–909, as regards the internal or local government of Pre-Commonwealth Puerto Rico, from the circumstances under which the Commonwealth locally governs itself at present, as hereinabove discussed. Under the then existing circumstances, it was appropriate to hold that the statute aimed at reaching all local transactions or conduct which Congress could have in any way reached through provisions in the Organic Acts under which Puerto Rico was then locally governed.

At present, such local transactions or conduct are to be dealt with by the Commonwealth under its own Constitution and internal laws, and it would be frustrative of the very purpose and intention of Congress in establishing the new status to now hold that said statute may accomplish by indirection the very thing that Congress expressly wanted to leave in the hands of the Commonwealth's government.

Moreover, Sec. 9 of the Federal Relations Act, Title 48 U.S.C.A. § 734, on which the government places so much stress, has acquired such a vitality after the establishment of the Commonwealth, that it may be safely accorded, as regards the applicability to the Commonwealth of the statutory laws of the United States, a function which is substantially similar to the function of the Interstate Commerce Clause of the Constitution, as regards the relations between the Federal Government and the governments of the different states of the Union.

I believe that if Cases v. United States, supra, were to be decided now by the Court of Appeals for the First Circuit,

under the circumstances prevailing at present, and Sec. 9 of the Federal Relations Act were accorded the vitality which it now has, the ratio decidendi would be the opposite of what it was when said case was decided.

I must therefore hold, that the language "or within any Territory or possession or the District of Columbia" appearing at the end of paragraph (2) of § 901, Title 15 U.S.C.A. is inapplicable to the transportation in and within the Commonwealth of Puerto Rico of any firearm or ammunition under the provisions of Sec. 902(e) of said Title 15, U.S.C.A.

Nothing said in this order shall be understood to indicate that this court is deciding:

(A) That Congress in enacting Public Law 600, 81st Congress of July 3, 1950, c. 446, 64 Stat. 319 and Public Law 447, 82d Congress, Joint Resolution of July 3, 1952, c. 567, 66 Stat. 327, 48 U.S.C.A. § 731d note, in any way renounced its Powers under Art. 4, § 3, cl. 2 of the Constitution; nor that Congress could lawfully renounce said Powers.

(B) Nor that the Commonwealth of Puerto Rico ceased to be "Territory" of the United States under said Art. 4, § 3, cl. 2 of the Constitution, nor that it may not come within any of the conventional labels referred to in the course of this order, as regards any other portion of the statute assailed herein, or as regards any other statutory laws of the United States not locally inapplicable.

(C) Nor that any other statutory laws of the United States may not be applicable to the Commonwealth of Puerto Rico.

Indeed in Mitchell v. Rubio, D.C., 139 F.Supp. 379, this Court held the Fair Labor Standards Act, Title 29 U.S.C.A. § 201 et seq., Chapter 8, applicable in the Commonwealth of Puerto Rico.

In United States v. Carrion, D.C., 140 F.Supp. 226, and in Carrion v. Gonzalez, D.C., 125 F.Supp. 819, opinion of Acting Judge Snyder, this Court decided that the Smith Act, Title 18 U.S.C.A. § 2385 is also applicable in the Commonwealth.

And in United States v. Mejias, D.C., 131 F.Supp. 957 and Cosentino v. International Longshoremen's Ass'n, etc., D.C., 126 F.Supp. 420, opinion of Acting Judge Snyder, this Court decided that the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq. is applicable in the Commonwealth.

Also compare Mora v. Mejias, D.C., 115 F.Supp. 610, 612, where this court held that "within the intendment and policy of Section 2281, Title 28 U.S.C.A., the Commonwealth of Puerto Rico must be considered a State and thus a three judge court— in order to avoid 'unnecessary interference with the laws of a sovereign state', Stainback v. Mo Hock Ke Lok PO, 336 U.S. [368] 377–378, 69 S.Ct. [606] 611 [93 L.Ed. 741], has to be convened in this case."

Although all the matters embraced in A to C above were very ably discussed in the exhaustive memoranda filed by the parties, I have not found it necessary or proper to express any opinion in regard to any of them, confining myself to a decision of the real question at issue, without indulging in advisory statements at odds with the proper functions of the judiciary.

The motion to dismiss the indictment must be granted.

It is so ordered.