**Virginia DARE, Plaintiff,**

**v.**

**SECRETARY OF the AIR FORCE and Commanding General, Clark Air Force Base, Defendants.**

**Civ. A. No. 84–658–JLL.**

United States District Court,
D. Delaware.

May 1, 1985.

Robert Thurston Barrett, Dover, Del., and Fredric J. Gross, Mount Ephraim, N.J., of counsel, for plaintiff.

Joseph J. Farnan, Jr., U.S. Atty., and Charlene D. Davis, Asst. U.S. Atty., Wil-

mington, Del., Vincent M. Garvey and Kathleen S. Devine, Dept. of Justice Civil Div., Washington, D.C., Major Alexander S. Nicholas, Office of the Judge Advocate Gen., U.S. Air Force, Washington, D.C., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

The plaintiff has brought this suit under the Parental Kidnapping Prevention Act of 1980 ("PKPA"), Pub.L. No. 96–611, § 7, 94 Stat. 3569 (codified at 28 U.S.C. § 1738A), seeking the following relief:

(1) a writ of mandamus directing the defendants[1] to require the plaintiff's estranged husband to comply with orders of the Family Court of the State of Delaware ("Family Court"), (Docket Item ["D.I."] 1 at 8); or

(2) an affirmative injunction directing the defendants to return to the Family Court the plaintiff's young daughter, now living at Clark Air Base with the plaintiff's estranged husband, so that the court can exercise jurisdiction to make custody determinations regarding the child, (*id.*); or

(3) a declaratory judgment declaring the defendants to be bound by the PKPA and thus required to obey the orders of the Family Court regarding the daughter of the plaintiff and her estranged husband. (*Id.* at 8–9.)

The case is before this Court on the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), (D.I. 5), and on the plaintiff's cross-motion for summary judgment. (D.I. 7.) Because the Court agrees with the defendants that the statute cannot be read to cover the facts presented in the complaint, the defendants' motion to dismiss will be granted and the plaintiff's motion for summary judgment will be denied.

## BACKGROUND

The factual allegations of the complaint which must be taken as true for purposes of the motion to dismiss, *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984), show that the plaintiff, Virginia Dare, and United States Air Force Staff Sergeant Francis Dare are married, though living separate and apart, and are the parents of six-year-old Gabrielle C. Dare. (D.I. 1 at ¶¶ 7, 8.) Since November of 1980, the Family Court of the State of Delaware has exercised jurisdiction over the Dare family by making and occasionally modifying determinations providing for Gabrielle's custody and the parents' visitation rights. (*Id.* at ¶ 12.) In connection with his active duty service in the Air Force, Sgt. Dare was transferred in July or August of 1983 to Clark Air Base in the Republic of the Philippines. (*Id.* at Plaintiff's Exhibits 1 & 3.) At that time, he moved Gabrielle from the State of Delaware and took her with him to his new assignment overseas. (*Id.* at ¶ 15, Plaintiff's Exhibit 3.) On January 18, 1984, the Family Court responded to Mrs. Dare's petition for contact with Gabrielle in order to arrange visitation rights by ordering Sgt. Dare to appear before the court on February 15, 1984, to show cause why Mrs. Dare's petition should not be granted. (*Id.* at ¶ 13 and Plaintiff's Exhibit 1.) Sgt. Dare failed to appear as ordered and on February 15, 1985, the Family Court, through Judge David P. Buckson, held Sgt. Dare in contempt and entered an order providing for the contempt to be purged by Sgt. Dare's returning Gabrielle to the court on or before April 1, 1984. (*Id.* at ¶ 14 and Plaintiff's Exhibit 2.) To date, Sgt. Dare has failed to comply with the orders of the Family Court and Mrs. Dare's efforts through her representatives in Congress have also failed to secure Gabrielle's return to Delaware. (*Id.* at ¶¶ 20–21.) The instant case is apparently a consequence of

---

1. One of the two listed defendants is the Commanding General of Clark Air Force Base. (Docket Item 1.) The brief for the defense, however, states that the correct name of the military installation is Clark Air Base and that the base does not have a commanding general, but rather is governed by several officers. (Docket Item 6 at 2 n. 1.) In any case, the Secretary of the Air Force is acknowledged to have responsibility for the command. (*Id.*)

Mrs. Dare's inability to obtain the cooperation of her husband's military superiors (referred to collectively as "the Secretary") in compelling him to obey the orders of the Family Court.

LAW

 In response to mounting publicity about the practice of one parent removing and concealing a child from the other parent, *see Parental Kidnapping Prevention Act of 1979: Joint Hearing on S. 105 before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary and the Subcomm. on Child and Human Development of the Senate Comm. on Labor and Human Resources,* 9th Cong., 2d Sess. (1980), Congress enacted the PKPA. The portion of the act at issue in this case reads:

> (a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify ..., any child custody determination made consistently with the provisions of this section by a court of another State.

The plaintiff contends that this language, "imposes on commanders of overseas United States military installations which have no resident civil courts a duty to enforce qualifying child custody determinations against members of their commands." (D.I. 7.) The Secretary counters that the PKPA was established not to solve every conceivable parental child-snatching situation but simply to "avoid jurisdictional competition and conflict concerning child custody determinations between various states...." (*See* D.I. 6 at 4.) Although the Court understands the concern of the plaintiff, the Secretary's assertion that the PKPA does not apply to this case is correct. Two related reasons compel this conclusion.

First, the Court cannot accept the proposition that Clark Air Base constitutes a "State" within the meaning of the PKPA. Subsection (b)(8) of 28 U.S.C. § 1738A defines a "State" as "a State of the United States, the District of Columbia, the Com-

monwealth of Puerto Rico, or a territory or possession of the United States." The plaintiff argues for applicability of the statute on the theory that "the United States has possession of Clark Air Base just as surely as a lodger has overnight possession of a room at a Holiday Inn." (D.I. 13 at 7; *see also* D.I. 9 at 13 & n. 8.) It should hardly require mention, however, that the sovereign Republic of the Philippines is not a Holiday Inn. The word "possession," like any word, may have different legal significance and "may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). The definition of a "possession of the United States" is not provided in the PKPA, nor is it provided in any authority cited by the plaintiff; nevertheless there are some clues available.

A standard legal dictionary indicates that a possession is an area over which a country exercises sovereignty only by right of conquest. *See* Black's Law Dictionary 393 (5th ed. 1979) (under definition of "dependency"). That definition is supported by the Supreme Court's remark in *Posadas v. National City Bank,* 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936), that "the Philippine Islands constituted a dependency, for they were not possessions *merely,* but possessions held by right of cession from Spain...."[2] *Id.* at 502, 56 S.Ct. at 351. (emphasis added). Over a hundred years earlier, Justice Bushrod Washington, in his capacity as Circuit Justice, had defined "possession" in contrast to "dependency" by saying, "the mind ... is irresistably led to annex to ['dependency'] the idea of possession, accompanied by title, in opposition to mere naked possession, obtained either by force, and against right, or rightfully acquired, and wrongfully withheld from the legal sovereign." *United States v. The Nancy,* 27 F.Cas. 69, 71 (C.C.D.Pa.1814) (No. 15,854).

2. The Philippines became an independent nation in 1946. *See* Treaty of General Relations, July 4, 1946, United States-Philippines, 61 Stat. 1174, T.I.A.S. No. 1539.

■ Of course, the citation of these authorities is not meant to suggest that there is a single, set definition for "possession," even in the context of international law. In one of the *Insular* cases, three of the justices in the plurality characterized Puerto Rico as a possession, *Downes v. Bidwell,* 182 U.S. 244, 341–42, 21 S.Ct. 770, 807–08, 45 L.Ed. 1088 (1901) (White, Shiras, and McKenna, J.J., concurring), while the opinion for the court referred to the island as a "territory of the United States." *Id.* at 248–49, 21 S.Ct. at 772. A later federal case distinguished the "organized and incorporated territory" of Alaska from "possessions of the United States such as Puerto Rico and, formerly, the Philippines...." *United States v. Farwell,* 11 Alaska 507, 76 F.Supp. 35, 40 (D.Alaska 1948) (citations omitted). It appears, then, that the word "possession," like the word "territory," has "been considered susceptible of interpretation—that is, it does not have a fixed and technical meaning that must be accorded to it in all circumstances." *Americana of Puerto Rico v. Kaplus,* 368 F.2d 431, 436 (3d Cir.1966), *cert. denied,* 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967). The Supreme Court has counseled that determining "whether [an area] comes within a given congressional act applicable in terms to a 'territory,' depends upon the character and aim of the act[,]" *Puerto Rico v. Shell Co.,* 302 U.S. 253, 258, 58 S.Ct. 167, 169, 82 L.Ed. 235 (1937), and that counsel seems equally applicable to determining what is or isn't a possession, for

> [w]ords generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed.

*Id.* Following that instruction, this Court has considered the word "possession" in the PKPA and has concluded that Congress did not intend for it to encompass land which, like Clark Air Base, belongs to a foreign sovereign and which the United States Armed Services occupy only at the pleasure of that sovereign. *Cf.* Treaty of General Relations, July 4, 1946, United States-Philippines, 61 Stat. 1174, T.I.A.S. No. 1539; Military Bases Agreement, March 14, 1947, United States-Philippines, 61 Stat. 4019, T.I.A.S. No. 1775; Amendment to Military Bases Agreement, January 7, 1979, 30 U.S.T. 863, T.I.A.S. No. 9224. Clark Air Base is therefore not a "state" as that term is defined in the PKPA.

■ A second and closely related reason for holding the PKPA inapplicable to the facts of this case is that the Court cannot accept the plaintiff's inclusion of military commanders under the rubric of "appropriate authorities" bound by the act. It has long been settled that "the military is, by necessity, a specialized society separate from civilian society[,]" *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974), and that "judges are not given the task of running the Army," or any other armed service. *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). To insert the combined court systems of the federal and state governments into the command of armed service personnel—ordering them when and where to appear and how to deal with their dependents—would be something of such extraordinary and far-reaching effect that it may fairly be expected that Congress would never do so without being completely clear about its intent. No such clear intent is evident in the PKPA.

This Court knows and this case demonstrates that family strife breaches geographical barriers and cuts across varied occupations; and perhaps there ought to be a mechanism to deal with problems like those affecting the Dare family. But, as with other complaints connected with life in the military, "[t]he responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and the President of the United States and his subordinates." *Id.* at 93–94, 73 S.Ct. at 539–40. The Court

is not empowered to grant the relief the plaintiff seeks and the case must therefore be dismissed. Having thus disposed of the case it is not necessary for the Court to further consider the meaning or scope of the PKPA.

An order will be entered in accordance with this memorandum opinion.