

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2009

# USA v. Marco Laboy-Torres

Precedential or Non-Precedential: Precedential

Docket No. 08-1220

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"USA v. Marco Laboy-Torres" (2009). *2009 Decisions.* Paper 1948.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1948

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1220

UNITED STATES OF AMERICA

v.

MARCO LABOY-TORRES,
Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 06-cr-0351-1
(Honorable Christopher C. Conner)

Argued November 20, 2008
Before: SCIRICA, *Chief Judge*, RENDELL, *Circuit Judge*,
and O'CONNOR,[*] *Associate Justice (Ret.)*.

[*]Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

(Filed: January 29, 2009)

FREDERICK W. ULRICH, ESQUIRE (ARGUED)
Office of Federal Public Defender
100 Chestnut Street , Suite 306
Harrisburg, Pennsylvania 17101
        Attorney for Appellant

THEODORE B. SMITH III, ESQUIRE (ARGUED)
Office of United States Attorney
220 Federal Building and Courthouse
228 Walnut Street, P.O. Box 11754
Harrisburg, Pennsylvania 17108
        Attorney for Appellee

---

OPINION OF THE COURT

---

O'CONNOR, *Associate Justice (Retired).*

Under federal law, it is a crime for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ship, transport, receive or possess a firearm or ammunition. 18 U. S. C. §922(g)(1). In *Small* v. *United States*, 544 U.S. 385 (2005), the Supreme Court construed the phrase "convict[ions] in any court" in that statute to "encompas[s] only domestic, not foreign,

2

convictions." *Id.* at 387. The question presented is whether appellant's conviction in a Puerto Rican court for the possession of marijuana is a "foreign" or "domestic" conviction under §922(g)(1), a question of first impression in the Courts of Appeals. The District Court concluded that it was a domestic conviction within the ambit of the statute's prohibition. We agree, and accordingly affirm the court's denial of appellant's motion to dismiss his indictment.

I.

The material facts are not in dispute. In July 1999, appellant Marco Laboy-Torres was convicted in the Superior Court of Mayaguez, Puerto Rico, for possessing marijuana, and was sentenced to 36 months' probation. Two years later, he moved to the United States in violation of the terms of his sentence. When he returned to Puerto Rico in 2005, he was re-arrested, his probation was revoked, and he was sentenced to serve a three year term of incarceration, with two years' credit for the probation he had previously served. He ultimately served seven months' imprisonment. After he was released, he returned to the United States.

In June 2006, appellant attempted to purchase from a licensed firearms dealer in York, Pennsylvania, two semi-automatic pistols and one standard pistol. On the form required by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to complete a firearms purchase, appellant certified that he had never been convicted in any court of a crime punishable

3

by imprisonment for a term exceeding one year.  Supplemental Appendix for Appellee 1.[1]  When the dealer performed an instant criminal background check, appellant's Puerto Rican conviction turned up, and the dealer consequently refused to sell appellant the three handguns.  Six days later, appellant endeavored to purchase two handguns from a different dealer, with the same result.  Again he certified that he had no disqualifying convictions, Supplemental Appendix for Appellee 5, again a criminal background check uncovered his Puerto Rican conviction, and again the transaction was refused.

Three months later, agents of the ATF interviewed appellant, and he confirmed that he had been convicted for possession of marijuana in Puerto Rico and admitted his two subsequent attempts to purchase firearms in Pennsylvania.  He was later indicted by a grand jury for two counts of making false or fictitious statements to deceive a licensed firearms dealer in the sale or acquisition of a firearm, in violation of 18 U. S. C. §922(a)(6).  In relevant part, that statute makes it unlawful "knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness

---

[1]ATF Form 4473 includes the question: "Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" Supplemental Appendix for Appellee 1 (emphasis omitted). Appellant answered "[n]o." *Ibid*.

4

of [a] sale [of firearms]." *Ibid.* The Government asserted that appellant knew that each of his denials of disqualifying convictions was false. It further asserted that each was material because his Puerto Rican conviction made it unlawful for him to purchase firearms under §922(g)(1), which provides that it is "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition."

Appellant pleaded not guilty and moved to dismiss his indictment on the ground that the Government failed adequately to allege the materiality element of the charged offense. *United States* v. *Laboy-Torres*, 2007 WL 2155550, *1 (MD Pa. 2007). He asserted that pursuant to the reasoning of *Small* v. *United States*, 544 U.S. 385, the firearms purchases he attempted would have been lawful under §922(g)(1) because his Puerto Rican conviction was entered by a "foreign" court excluded from the statute's reference to "any court." *Id.* at *2; *see Small*, 544 U.S. at 387 (construing §922(g)(1) to "encompas[s] only domestic, not foreign, convictions"). As his attempted purchases would have been lawful notwithstanding his Puerto Rican conviction, he argued that conviction was not a fact material to the lawfulness of each attempted purchase. 2007 WL 2155550, at *2. In the absence of materiality—an element necessary for conviction under §922(a)(6)—appellant contended that his indictment was legally deficient and had to be dismissed. *Ibid.*

The District Court denied his motion, rejecting the premise upon which it was based. The court concluded that

5

appellant's Puerto Rican conviction was a "domestic" conviction under *Small*, and that appellant's attempted purchases thus were prohibited by §922(g)(1). *Id.* at *2–*3. In light of this conclusion, appellant's contention that his omissions were immaterial—and that his indictment under §922(a)(6) thus was legally insufficient—could not succeed.

Appellant then pleaded guilty to one count of the indictment, on the condition that he could appeal the District Court's denial of his dismissal motion. After sentencing,[2] he filed the instant appeal, which presents a single issue. Specifically, appellant challenges only the District Court's conclusion that his Puerto Rican conviction was a "domestic" conviction under §922(g)(1) and *Small*. We have jurisdiction to consider his timely appeal under 28 U. S. C. §1291, and we review the District Court's legal conclusion *de novo*. *United States* v. *Myers*, 308 F. 3d 251, 255 (3d Cir. 2002).

## II.

A review of the principles that animated the Supreme Court's decision in *Small* demonstrates that decision's inapplicability to Puerto Rican convictions. Put simply, Puerto Rican convictions lack the characteristics central to the Court's

[2]Appellant was sentenced to imprisonment for 12 months plus one day and two years' supervised release. He was also ordered to pay a $500 fine and a $100 special assessment. App. to Brief for Appellant 3–9.

6

treatment of foreign convictions. In the absence of these characteristics, there is no basis to extend the reasoning of *Small* to the courts of Puerto Rico. Moreover, precedent and principle counsel in favor of treating Puerto Rican courts as "domestic" courts for purposes of §922(g)(1). We thus conclude that the District Court properly included Puerto Rican convictions among the predicates that trigger §922(g)(1)'s prohibitions.

## A.

In *Small*, the Supreme Court considered whether a Japanese conviction qualified as a predicate conviction under §922(g)(1). The Court began its analysis with "the legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." *Id.* at 388–389. "[A]lthough the presumption against extraterritorial application d[id] not apply directly" because *Small* did not concern the applicability of a United States law to foreign conduct, the Court nonetheless reasoned that "a similar assumption [was] appropriate," *id.* at 389, when construing the statute's use of the phrase "any court." The fact that the statute would be presumed not to prohibit conduct that occurs in Japan predisposed the Court similarly to presume that Congress did not intend Japanese convictions to serve as predicates for the criminalization of conduct that occurs in the United States. *Ibid.*

The Court found the propriety of this presumption reinforced by three "important ways" in which "foreign convictions differ from domestic convictions." *Ibid.* First,

7

foreign laws may prohibit "conduct that domestic laws would permit, for example, . . . engaging in economic conduct that our society might encourage." *Ibid.* (citing Russian laws criminalizing "Private Entrepreneurial Activity" and "Speculation," and Cuban laws forbidding propaganda that incites against the social order, international solidarity, or the communist state). Second, a foreign legal system may lack the safeguards necessary to ensure that the convictions it produces are consistent with American notions of fairness, most notably, the guarantee of due process. *Id.* at 389–90 (citing a legal regime that additionally fails to guarantee equal protection under the law by providing that "the testimony of one man equals that of two women"). Third, foreign convictions may criminalize "conduct that domestic law punishes far less severely." *Id.* at 390 (citing a provision of Singapore's law that authorizes imprisonment for up to three years for an act of vandalism). In light of these differences, the Court concluded that convictions in foreign courts of crimes punishable by imprisonment for a year or more "less reliably identif[y] dangerous individuals for the purposes of U. S. law." *Ibid.*

The Court "consequently assume[d] a congressional intent that the phrase 'convicted in any court' applie[d] domestically, not extraterritorially." *Id.* at 390–91. It found no reason in the statutory language, context, history, or purpose of §922(g)(1) to depart from this assumption. *Id.* at 391–94.

Appellant's attempt to extend the reasoning of *Small* to Puerto Rican convictions fails where it must begin. As

8

explained, the *Small* Court's analysis firmly was rooted in the presumption against the extraterritorial application of federal laws. However, the opposite presumption applies to Puerto Rico; federal laws are presumed to apply to Puerto Rican conduct. 48 U. S. C. §734 ("The statutory laws of the United States not locally inapplicable . . . shall have the same force and effect in Puerto Rico as in the United States[.]"); *see also*, *e.g.*, *United States* v. *Acosta-Martinez*, 252 F. 3d 13, 18 (1st Cir. 2001) (explaining that "the default rule . . . is that, as a general matter, a federal statute does apply to Puerto Rico pursuant to 48 U. S. C. §734"); *Trailer Marine Transport Corp.* v. *Rivera Vazquez,* 977 F. 2d 1, 18 (1st Cir. 1992) ("[F]ederal statutes apply in Puerto Rico, as they do in any state, unless otherwise provided.").[3]

This fundamental difference is illustrated in *Small* itself. In its discussion of the presumption against extraterritorial application, the *Small* Court cited four cases, in each of which the presumption was applied to limit the scope of a federal statute. *Small*, 544 U.S. at 388–89. Yet each of those statutes could be applied to Puerto Rican conduct. For example, the Court cited *Smith* v. *United States*, 507 U.S. 197, 203–204

---

[3]Of course, we are not bound by the decisions of the First Circuit. However, in light of that court's appellate jurisdiction over cases from the District of Puerto Rico, and its resultant expertise with Puerto Rican law, we accord its decisions on that subject great weight.

(1993), which applied the presumption against extraterritorial application to limit the scope of the Federal Tort Claims Act. That statute has since been applied to conduct that occurred in Puerto Rico. *E.g.*, *Torres-Lazarini* v. *United States*, 523 F. 3d 69 (1st Cir. 2008). Similarly, Title VII of the Civil Rights Act of 1964 has been held inapplicable to extraterritorial conduct, *EEOC* v. *Arabian American Oil Co.*, 499 U.S. 244, 248 (1991), but applicable to Puerto Rican conduct, *id.* at 267 n.3. The scope of the Federal Eight Hour Law, 40 U. S. C. §§321–26, was also limited in this manner, *Foley Bros., Inc.* v. *Filardo*, 336 U.S. 281, 285–86 (1949), but the Fair Labor Standards Act has since been applied to employer conduct in Puerto Rico, *Mitchell* v. *Nolla, Galib & Compania*, 176 F. Supp. 883, 887–88 (D.P.R. 1959). Lastly, applying the presumption against extraterritorial scope, the Supreme Court has held that an anti-piracy statute applied only to United States citizens aboard ships belonging exclusively to subjects of a foreign state. *United States* v. *Palmer*, 3 Wheat. 610, 630–634 (1818). Because Puerto Ricans are United States citizens, *infra,* at 14, today the statute would govern their conduct.

Section 922(g) similarly is applied to Puerto Rican conduct. In the five year period ending September 2008 there were more than 175 prosecutions under that section in the United States District Court for the District of Puerto Rico. Unpublished Data, Criminal Production Database, Administrative Office of the U.S. Courts, Washington, DC. (generated December 2, 2008, available in Clerk of Court's file).

10

Presumably, most (if not all) of those prosecutions stemmed from conduct that occurred in Puerto Rico. Certainly, some of them did. *E.g.*, *U. S.* v. *Andujar-Ortiz*, 575 F. Supp. 2d 373 (D.P.R. 2008) (concerning prosecution for violation of §922(g)(1) stemming from conduct occurring in Puerto Rico); *U. S.* v. *Torres-Gonzalez*, 526 F. Supp. 2d 210 (D.P.R. 2007) (same). It would turn *Small* on its head to conclude that Puerto Rican convictions cannot serve as predicate convictions under §922(g)(1) notwithstanding the fact that that section's prohibitions govern Puerto Rican conduct.

Similarly inapposite are the important differences between U. S. and foreign law described by the Court in *Small*. Puerto Rican convictions are consistent with the "American understanding of fairness," *Small*, 544 U.S. at 389, because the fundamental provisions of the U. S. Constitution that guarantee fairness apply with equal force in Puerto Rico. *E.g., Posadas de Puerto Rico Associates* v. *Tourism Co. of P. R.*, 478 U.S. 328, 331 n.1 (1986) (citing *Balzac* v. *Porto Rico*, 258 U.S. 298, 314 (1922) (First Amendment Free Speech Clause); *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 668–69, and n.5 (1974) (Due Process Clause of the Fifth or Fourteenth Amendment); *Examining Bd. of Engineers, Architects and Surveyors* v. *Flores de Otero*, 426 U.S. 572, 599–601 (1976) (equal protection guarantee of the Fifth or Fourteenth Amendment); *Torres* v. *Puerto Rico*, 442 U.S. 465, 471 (1979) (Fourth Amendment)). We are mindful that not every constitutional right has been extended to Puerto Ricans. *E.g.,*

11

*Examining Board*, 426 U.S. at 600 n.30 (describing the Insular Cases and explaining that "only 'fundamental' constitutional rights were guaranteed to the inhabitants" of Puerto Rico). It is the fundamental constitutional rights that were accorded Puerto Ricans, however, that guarantee them the "American understanding of fairness," *Small*, 544 U.S. at 389.

These protections not only guarantee American fairness in Puerto Rican courts, but also impose limitations upon the types of conduct that can be criminalized and the extent of punishment that can be imposed for those crimes. At oral argument, appellant's counsel suggested that Puerto Rico's authorization of a three year term of incarceration for the crime of possessing a small amount of marijuana demonstrates that Puerto Rico punishes certain crimes far more severely than do the States. *See* Transcript of Oral Argument at 12. We disagree. There is a wide disparity in the punishment authorized in different States for the crime of possessing a small amount of marijuana. Compare, *e.g.*, N. M. Stat. Ann. §30–31–23(b)(1) (2005) (possession of one ounce or less of marijuana is, for the first offense, punishable by a fine of 50 to 100 dollars and imprisonment for up to 15 days) with Fla. Stat. §§893.13(6)(b), 775.082(4)(a), 775.083(1)(d) (2005) (possession of not more than 20 grams of cannabis (which is less than one ounce) is, for the first offense, punishable by a fine of up to 1,000 dollars and imprisonment for up to one year). While admittedly stringent, Puerto Rico's choice of the maximum punishment for the offense is not qualitatively different from that of the States.

12

Moreover, we note that appellant was initially sentenced only to probation. He was incarcerated not because he possessed marijuana, but because he violated the terms of that probation. Appellant offers no other evidence of the purported severity of Puerto Rican punishment.

Lastly, unlike a foreign defendant, a Puerto Rican defendant may collaterally challenge the fairness of her conviction by petitioning the Federal District Court for the District of Puerto Rico for a federal writ of habeas corpus. *Cruz-Sanchez* v. *Rivera-Cordero*, 835 F. 2d 947, 948 (1st Cir. 1987). In some cases, direct review is also available in the U. S. Supreme Court through a petition for a writ of certiorari. 28 U. S. C. §1258; 48 U. S. C. §864. In short, the constitutional and statutory protections accorded Puerto Ricans would foreclose the enforcement in Puerto Rico of statutes like the foreign laws the *Small* Court found troubling.

Against this backdrop, it simply cannot be said that Puerto Rican crimes punishable by imprisonment for a year or more "less reliably identif[y] dangerous individuals" than do the crimes codified by the States. *Small*, 544 U.S. at 390. We thus find no basis for extending *Small* to convictions entered by Puerto Rican courts.

## B.

To the contrary, we conclude that Congress intended to include Puerto Rican convictions as predicates for purposes of

13

§922(g)(1). This conclusion is consistent with Congress' and courts' treatment of Puerto Rico in other contexts.

Puerto Rico possesses "a measure of autonomy comparable to that possessed by the States." *Examining Board*, 426 U.S. at 597; *see also United States* v. *Acosta-Martinez*, 252 F. 3d 13, 18 (1st Cir. 2001) ("Congress maintains similar powers over Puerto Rico as it possesses over the federal states."). Like the States, it has a republican form of government, organized pursuant to a constitution adopted by its people, and a bill of rights. *E.g.,* 48 U. S. C. §§731b–731e. This government enjoys the same immunity from suit possessed by the States, *Ramirez* v. *Puerto Rico Fire Service*, 715 F. 2d 694, 697 (1st Cir. 1983). Like the States, Puerto Rico lacks "the full sovereignty of an independent nation," for example, the power to manage its "external relations with other nations," which was retained by the Federal Government. *Americana of Puerto Rico, Inc.* v. *Kaplus*, 368 F. 2d 431, 435 (3d Cir. 1966). As with citizens of the States, Puerto Rican citizens are accorded United States citizenship, *id.,* at 434, and the fundamental protections of the United States Constitution, *supra,* at 11. The rights, privileges, and immunities attendant to United States citizenship are "respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union." 48 U. S. C. §737. Finally, Puerto Rican judgments are guaranteed the same full faith and credit as are those of the States. 28 U. S. C. §1738; *Americana of Puerto Rico, Inc.*, 368 F.2d at 437.

14

It is thus not surprising that "although Puerto Rico is not a state in the federal Union, 'it . . . seem[s] to have become a State within a common and accepted meaning of the word.' " *United States* v. *Steele*, 685 F. 2d 793, 805 n.7 (3d Cir. 1982) (quoting *Mora* v. *Mejias*, 206 F. 2d 377, 387 (1st Cir. 1953)); *see also Calero-Toledo*, 416 U.S. at 672 (quoting the same passage with approval). Consistent with this common and accepted understanding, Congress frequently uses the term "State" to refer also to Puerto Rico. Indeed, it did so in the section at issue here, §922(a)(2)(c). *See also*, *e.g.,* 15 U. S. C. §1171(b) (transportation of gambling devices); 16 U. S. C. §3371(h) (transportation of illegally taken wildlife); 18 U. S. C. §891(8) (extortionate credit transactions); 18 U. S. C. §1953(d)(1) (interstate transportation of wagering paraphernalia); 18 U. S. C. §1955(b)(3) (illegal gambling); 18 U. S. C. §1961(2) (racketeering influenced and corrupt organizations); 28 U. S. C. §1332(d) (defining "state" for purposes of diversity jurisdiction). More significantly, when Congress fails explicitly to refer to Puerto Rico, courts must nonetheless inquire whether it intended to do so. *E.g., Puerto Rico* v. *Shell Co. (P. R.), Ltd.*, 302 U.S. 253 (1937) (determining a statute's applicability to Puerto Rico is a question of congressional intent); *Acosta-Martinez*, 252 F. 3d at 11 ("When determining the applicability of a federal statute to Puerto Rico, courts must construe the language . . . to effectuate the intent of the lawmakers." (internal quotation marks omitted)). Conducting this inquiry, courts routinely conclude that Congress intended to include Puerto Rico even when a statute is silent on

15

that front. *E.g., Examining Board*, 426 U.S. at 597 (defining "State" to include Puerto Rico for purposes of 42 U. S. C. §1983 and 28 U. S. C. §1343(3)); *Americana of Puerto Rico, Inc.*, 368 F. 2d, at 437 (federal statute that referred to the proceedings of any "State, Territory, or Possession," applied to Puerto Rico even though Puerto Rico was not a State, Territory, or Possession); *U.S.I. Properties Corp.* v. *M.D. Constr. Co.*, 230 F. 3d 489, 499–500 (1st Cir. 2000) (defining "State" to include Puerto Rico for purposes of diversity jurisdiction under 28 U. S. C. §1332); *Cordova & Simonpietri Insurance Agency Inc.* v. *Chase Manhattan Bank N. A.*, 649 F. 2d 36, 38 (1st Cir. 1981) (treating Puerto Rico as a "State" under the Sherman Antitrust Act).

Of particular relevance here, courts—including this one—have included Puerto Rican convictions when construing statutory references to predicate "State" offenses. For example, in *United States* v. *Steele*, 685 F. 2d 793, 805 (3d Cir. 1982), this Court construed the definition of predicate offenses under the Travel Act, 18 U. S. C. §1952. As relevant, that statute criminalized the use of facilities of interstate commerce in furtherance of "bribery . . . in violation of the laws of the State in which committed." §1952. Like appellant here, the *Steele* defendants moved to dismiss their indictments on the theory that a Puerto Rican crime could not serve as a predicate for conviction under the federal statute. *Id*. at 804. Specifically, they argued that the provision's reference to "the laws of the State in which [the bribery was] committed" could not be

16

understood to encompass Puerto Rican antibribery laws because Puerto Rico is not a "State." *Ibid.* Reviewing the purpose and history of the legislation, we had "no difficulty rejecting [that] argument." *Id.* at 804–805. In short, we found "no reason to hold that Congress . . . chose the word 'State' to deny Puerto Rican law enforcement the assistance extended to other localities within Congress' power to protect." *Id.* at 805.

At least two Courts of Appeals reached the same conclusion when construing the definition of predicate offenses under the Federal Sentencing Guidelines' "career offender" provision, U. S. S. G. §4B1.1. That section provides for a heightened sentence if the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Ibid.* Predicate offenses are defined in pertinent part as "offense[s] under federal or state law." §§4B1.2(a), (b). The First and Ninth Circuits both have considered and rejected the argument that Puerto Rico convictions fall outside this provision because they are not "offense[s] under federal or state law." *E.g., United States* v. *Torres-Rosa,* 209 F. 3d 4, 8 (1st Cir. 2000); *United State*s v. *Cirino*, 419 F. 3d 1001, 1005 (9th Cir. 2005) *(per curiam).* They explained that that argument " 'completely ignores the body of case law recognizing that Congress has accorded the Commonwealth of Puerto Rico 'the degree of autonomy and independence normally associated with States of the Union.' " *Cirino*, 419 F.3d at 1003–1004 (quoting *Torres-Rosa*, 209 F. 3d at 8 (quotation marks and emphasis omitted)). In light of that

17

case law, these courts required the respective appellants to "sho[w] that the Sentencing Commission meant to exclude felony convictions in Puerto Rico Commonwealth Courts," and concluded that they had failed to do so. *Id.* at 1004.

The reasoning of these precedents would almost certainly dictate the conclusion that a reference to a "State court" in §922(g)(1) would have encompassed Puerto Rico. However, we need not reach that hurdle. We face a statute with broader language, making it even easier to conclude that Congress intended to include Puerto Rican convictions. The statute refers not to "State" convictions, but to convictions in "any court." §922(g)(1). And the Supreme Court did not construe the statute to apply only to "State" courts, but to include all "domestic" courts. *Small*, 544 U. S. at 387. In this context, it is difficult to imagine a " 'showin[g]' that [Congress] meant to exclude felony convictions in Puerto Rico Commonwealth Courts." *Cirino*, 419 F. 3d, at 1004. Certainly, appellant has failed to make such a showing here.

His effort to do so is largely ill conceived. Appellant principally stresses that Puerto Rico has its own autonomous government, constituted and bound by a written constitution, and with three branches mirroring those of our national government. Brief for Appellant 14. Appellant's great reliance upon this point is perplexing, as the same can be said of every State in the Union (with variations in the structures of those governments). *E.g., Trailer Marine Transport Corp.* v. *Rivera Vazquez*, 977 F. 2d 1, 17 (1st Cir. 1992) ("[T]he government of

18

the Commonwealth of Puerto Rico in many respects resembles that of a state."). Appellant similarly emphasizes the fact that Puerto Rico has been held "a separate sovereign for purposes of the Double Jeopardy [and Commerce] Clause[s]," Brief for Appellant 14, a fact also true of the States. *E.g., Heath* v. *Alabama*, 474 U.S. 82, 89 (1985) (For purposes of the Double Jeopardy Clause, "the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government" (citation omitted)); *Trailer Marine Transport Corp.*, 977 F. 2d at 19 ("Puerto Rico is subject to the constraints of the dormant Commerce Clause doctrine *in the same fashion as the states*." (emphasis added)). These arguments demonstrate only that Puerto Rican sovereignty is of an extent and character similar to that of the States. They thus undermine appellant's position.

Appellant stands on somewhat firmer ground when he invokes a federal taxation provision that distinguishes Puerto Rico and the States. Brief for Appellant 15. He cites *Riccio* v. *United States*, 1971 WL 442 (D. P. R. 1971), which concerned the application of 26 U. S. C. §2014. That statute provides credits against federal estate taxation for certain taxes "paid to any foreign country." §2014(a). "[F]or purposes of the credits authorized," the statute provides that "each possession of the United States shall be deemed to be a foreign country." §2014(g). As did the District Court in *Riccio*, we reject the idea "that this provision of law deals in some way with the status of

19

the Commonwealth of Puerto Rico." *Riccio*, 1971 WL 442 at *1 n.3. "Possession" and "foreign country" are "totally inconsistent terms," and we can conclude only that Congress, "as a matter of convenience and simplicity, . . . designate[d] [these fundamentally] different entities by the same term." *Ibid.* In other taxation provisions, Congress has drawn very different lines, even singling out Puerto Rico for treatment distinct from that accorded other "possessions." *E.g., Polychrome Intern. Corp.* v. *Krigger*, 5 F. 3d 1522, 1526 n.5 (3d Cir. 1993) ("Every U. S. possession . . . is eligible [for the establishment of foreign sales corporation status] except Puerto Rico." (citing Internal Revenue Code §927(d)(5)). Taken as a whole, federal taxation provisions support only the established propositions, described *supra*, that Congress need not treat Puerto Rico as a State in every context, and that Congress sometimes explicitly elects not to do so.

Appellant next argues that the frequently-invoked rule of lenity demands a construction of the statute in his favor. He is mistaken. The rule of lenity "comes into operation at the end of the process of construing what Congress has expressed, and applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *Burgess* v. *United States*, 128 S. Ct. 1572, 1580 (2008) (internal quotations omitted). For the reasons explained, Congress' incorporation of Puerto Rican convictions in §922(g)(1) is unambiguous. The rule of lenity thus finds no application to this case.

20

Lastly, appellant argues that "the existence of a Puerto Rican National Olympic Committee distinct from [that of] the United States" counsels against treating Puerto Rico as a domestic entity. Brief for Appellant 15. Without diminishing the pride Puerto Rico rightfully should enjoy in light of its place in the pantheon of international sporting events, we reject as meritless the proposition that classifications made in the context of the organization of such events find application to the construction of federal law.

### III.

Puerto Rican convictions are not "foreign" convictions for purposes of 18 U. S. C. §922(g)(1), as construed by the Supreme Court in *Small* v. *United States*, 544 U.S. 385 (2005). To the contrary, consistent with the treatment of Puerto Rico in other contexts, its convictions are properly viewed as "domestic" convictions that Congress intended to include among the predicates that trigger §922(g)(1)'s prohibitions. The District Court thus properly denied appellant's motion to dismiss his indictment.

AFFIRMED.